No. 14-4168

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STEPHEN HILL,

Plaintiff-Appellant,

v.

HOMEWARD RESIDENTIAL, INC.,

Defendant-Appellee.

On appeal from the United States District Court
Southern District of Ohio, Eastern Division
Case No. 2:13-cv-00388, Gregory L. Frost, District Judge.

BRIEF OF DEFENDANT-APPELLEE
HOMEWARD RESIDENTIAL, INC.

Kimberly Y. Smith Rivera (0066849)
**McGlinchey Stafford**
25550 Chagrin Boulevard, Suite 406
Cleveland, Ohio 44122-4640
Phone:    216-378-9905
Fax:        216-378-9910
kyrivera@mcglinchey.com

# <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed.R.App.P. 26.1(b) and Sixth Circuit Local Rule 26.1, Homeward Residential, Inc. states as follows:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    Yes. Homeward Residential, Inc. fka American Home Mortgage Servicing, Inc. is a wholly owned subsidiary of Homeward Residential Holdings, Inc., which is a wholly owned subsidiary of Ocwen Financial Corporation. Ocwen Financial Corporation is a publicly traded company.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?   If yes, list the identity of such corporation and the nature of the financial interest:

    No.

/s/*Kimberly Y. Smith Rivera*
*Counsel for Appellee Homeward*
*Residential, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS.........................................................................iii

TABLE OF CASES AND OTHER AUTHORITIES ................................v

STATEMENT WITH RESPECT TO ORAL ARGUMENT ......................ix

I.      STATEMENT OF THE ISSUES ..................................................1

II.     STATEMENT OF THE CASE AND FACTS .................................2

      A.      The facts preceding the lawsuit ............................................2

      B.      The events preceding the trial ...............................................6

      C.      The trial ..............................................................................9

III.    SUMMARY OF THE ARGUMENT...........................................10

IV.     LAW AND ARGUMENT..........................................................11

      A.      The District Court erred in denying Mr. Hill's Motion for
            Summary Judgment...........................................................11

            1.      *<u>There was no evidence establishing that Homeward used
                  an automatic dialing system or artificial or prerecorded
                  voice.</u>* ......................................................................13

            2.      *<u>Hill gave his prior express consent to be contacted on his
                  cellular telephone.</u>*................................................15

                a.  *Courts are bound by FCC rulings under the Hobbs
                    Act.* ................................................................15

                b.  *The FCC has defined prior express consent under the
                    TCPA.*................................................................16

B.    The District Court erred in instructing the jury that any autodialed calls made to wireless numbers provided to a creditor are permissible calls made with the "prior express consent" of the called party. ................................................20

    1.   *Hill's argument impermissibly limits the FCC's express conclusion regarding prior express consent.* ...........................20

    2.   *Hill's argument is illogical and unsupported by the FCC's reasoning.* ........................................................22

C.    The District Court erred in failing to allow Mr. Hill to compel the attendance of Homeward's corporate representative at trial. ........24

    1.   *Hill's purported trial subpoenas were invalid.* .........................25

        a.  *The first subpoena issued from the wrong court.* ................25

        b.  *Both subpoenas failed to be served on a "named person" and were, instead, a belated effort to seek discovery.* ...........................................................26

        c.  *Both subpoenas failed to tender the required fees.* .............28

        d.  *Both subpoenas failed to comply with the geographical limitations set forth in Rule 45(c).* ................29

        e.  *The second subpoena failed to allow for a reasonable time to comply.* ................................................29

    2.   *Hill's 30(b)(6) notice of trial deposition was invalid.* ..............31

    3.   *Hill's motion to compel was properly denied.* ..........................32

V.    CONCLUSION.................................................................34

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7).................................35

CERTIFICATE OF SERVICE .........................................................36

ADDENDUM ................................................................37

# TABLE OF CASES AND OTHER AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .......................... 12

*Avio, Inc. v. Alfoccino, Inc.*
  18 F.Supp.3d 882 (E.D.Mich.2014) .................................................. 16

*Baird v. Sabre Inc.*
  995 F.Supp.2d 1100 (C.D.Cal.2014) ................................................ 18

*Balschmiter v. TD Auto Fin. LLC*
  303 F.R.D. 508 (E.D.Wis.2014) ..................................................... 22

*Beard v. Norwegian Caribbean Lines*
  900 F.2d 71 (6th Cir.1990) ........................................................ 20

*Brown v. Hendler*
  No. 09 CIV 4486 RLE, 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011) ................. 30

*Brumley v. Albert E. Brumley & Sons, Inc.*
  No. 3:08–1193, 2010 WL 2696486 (M.D.Tenn. Jul. 7, 2010)........................... 29

*Cavero v. Franklin Collection Serv. Inc.*
  No. 11-22630-CIV, 2012 WL 279448 (S.D.Fla. Jan. 31, 2012)......................... 18

*CE Design, Ltd. v. Prism Bus. Media, Inc.*
  606 F.3d 443 (7th Cir.2010) ....................................................... 16

*Chavez v. Advantage Grp.*
  959 F.Supp.2d 1279  (D.Colo.2013) ................................................. 18

*Chyba v. First Fin. Asset Mgmt., Inc.*
  No. 12-cv-1721-BEN (WVG), 2014 WL 1744136 (S.D.Cal. Apr. 30, 2014) ..... 18

*Donahoo v. Ohio Dep't of Youth Servs.*
  211 F.R.D. 303 (N.D.Ohio 2002)..................................................... 30

*Dopson-Troutt v. Novartis Pharm. Corp.*
  295 F.R.D. 536 (M.D.Fla.2013) ................................................................ 28, 29

*Ghandi v. Police Dept. of City of Detroit*
  747 F.2d 338 (6th Cir. 1984) ............................................................................24

*Green v. MOBIS Alabama, LLC*
  No. 2:12CV277-MEF, 2014 WL 2041857 (M.D.Ala. May 16, 2014) ...............30

*Hamilton v. Spurling*
  No. 3:11cv00102, 2013 WL 1164336 (S.D.Ohio Mar. 20, 2013) ......................14

*Hill v. Nat'l R.R. Passenger Corp.*
  No. Civ. A. 88–5277, 1989 WL 87621 (E.D.La. Jul. 28, 1989) .........................27

*In re Otero Cnty. Hosp. Ass'n, Inc.*
  No. 11–11–13686 JL, 2014 WL 184984 (Bankr.D.N.M. Jan. 15, 2014)...... 27, 28

*Kennedy v. Settles*
  No. 10–299–HRW, 2014 WL 1621999 (E.D.Ky. April 22, 2014) .....................25

*Kenny v. Mercantile Adjustment Bureau, LLC*
  No. 10-CV-1010, 2013 WL 1855782 (W.D.N.Y. May 1, 2013) .........................18

*La Voz Radio de la Communidad v. F.C.C.*
  223 F.3d 313 (6th Cir.2000) .............................................................................16

*Leyse v. Clear Channel Broad., Inc.*
  545 Fed.Appx. 444 (6th Cir.2013) ....................................................................16

*Loyd v. St. Joseph Mercy Oakland*
  766 F.3d 580 (6th Cir.2014) ........................................................................ 24, 25

*Mais v. Gulf Coast Collection Bureau, Inc.*
  768 F.3d 1110 (11th Cir.2014) ..........................................................................21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .........................................12

*McClendon v. TelOhio Credit Union, Inc.*
No. 2:05-CV-1160, 2006 WL 2380601 (S.D.Ohio Aug. 14, 2006)....................30

*Moore v. Firstsource Advantage, LLC*
No. 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011) ................ 23, 24

*Murphy v. DCI Biologicals Orlando, LLC*
No. 6:12-cv-1459-ORL, 2013 WL 6865772  (M.D.Fla. Dec. 31, 2013).............19

*Penn v. NRA Group, LLC*
No. Civ. JKB–13–0785, 2014 WL 2986787 (D.Md. Jul. 1, 2014).....................18

*Pinkard v. Wal-Mart Stores, Inc.*
No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D.Ala. Nov. 9, 2012) .............19

*Sartori v. Susan C. Little & Assoc., P.A.*
571 Fed.Appx. 677 (10th Cir.2014) ...................................................................22

*Saunders v. NCO Fin. Sys., Inc.*
910 F.Supp.2d 464 (E.D.N.Y.2012)...................................................................18

*Smith v. Progressive Fin. Servs., Inc.*
No. 6:12-cv-1704-MC, 2013 WL 3995004 (D.Or. Aug. 1, 2013)......................18

*Smith v. Royal Caribbean Cruises, Ltd.*
302 F.R.D. 688 (S.D.Fla.2014) .........................................................................27

*Stuhlmacher v. Home Depot U.S.A., Inc.*
No. 2:10–CV–00467–APR, 2014 WL 835382 (N.D.Ind. Mar. 4, 2014)............32

*Toth v. Grand Trunk R.R.*
306 F.3d 335 (6th Cir.2002) ..............................................................................25

*U.S. v. Morales*
687 F.3d 697 (6th Cir. 2012)..............................................................................24

*Village of Oakwood v. State Bank and Trust Co.*
539 F.3d 373 (6th Cir.2008) ..............................................................................11

*Wills v. Optimum Outcomes, Inc.*
No. 1:13-CV-26-PMW, 2014 WL 220707 (D.Utah Jan. 21, 2014)....................18

*Zehala v. Am. Express*
No. 2:10-cv-848, 2011 WL 4484297 (S.D.Ohio Sept. 26, 2011) .......................12

**STATUTES**

28 U.S.C. § 2342 ....................................................................................................16
28 U.S.C. § 2344 ....................................................................................................16
47 U.S.C. § 227 .................................................................................. 10, 12, 13, 15
47 U.S.C. § 402 ......................................................................................................15

**RULES**

Fed.R.App.P.34 ....................................................................................................... ix
Fed.R.Civ.P. 30 ................................................................... 8, 9, 26, 27, 28, 31, 32
Fed.R.Civ.P. 45 ...................................... 1, 7, 8, 9, 11, 25, 26, 27, 28, 29, 30, 31, 33
Fed.R.Civ.P. 56 .....................................................................................................11

**REGULATIONS**

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*
7 FCC Rcd. 8752 (1992) ............................................................................ 17, 23

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*
23 FCC Rcd. 559 (2008) .......................................................... 10, 17, 20, 21, 23

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*
27 FCC Rcd. 1830 (2012) ..................................................................................17

## <u>STATEMENT WITH RESPECT TO ORAL ARGUMENT</u>

Pursuant to Fed.R.App.P. 34, Appellee Homeward Residential, Inc. respectfully contends that oral argument in this matter is not necessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Should oral argument be held, however, Homeward requests the opportunity to participate.

## I.     <u>STATEMENT OF THE ISSUES</u>

1.     To state a claim under the Telephone Consumer Protection Act ("TCPA"), a plaintiff must prove that a defendant made calls to a cellular telephone using an automatic telephone dialing system, as specifically defined by the statute, or an artificial or prerecorded voice.  In Hill's motion for summary judgment, he set forth no evidence that Homeward used such equipment, and Homeward set forth evidence in response showing that it did not.  Did the district court err in denying Hill's motion for summary judgment?

2.     To state a violation under the TCPA, calls made to a cellular telephone must be made without the called party's prior express consent which, under binding rulings from the Federal Communications Commission ("FCC"), is given when a debtor voluntarily gives a cellular telephone number to a creditor in relation to an existing debt.  Here, Hill admitted that he repeatedly gave his cellular telephone number to Homeward, and even instructed Homeward to use it.  Did Homeward have Hill's prior express consent?

 3.     To secure a witness for trial, a plaintiff is required to issue a proper trial subpoena in compliance with Fed.R.Civ.P. 45.  Here, Hill never issued any trial subpoena in compliance with Fed.R.Civ.P. 45.  Did the district court err by refusing to force Homeward to produce a trial witness?

4.    Pursuant to binding FCC rulings, "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." In defining "prior express consent" for the jury, the district court quoted the FCC's ruling. Did the district court err in providing this jury instruction?

## II.    STATEMENT OF THE CASE AND FACTS

### A.    The facts preceding the lawsuit

In 2003, Appellant Stephen M. Hill obtained a mortgage loan. (Complaint, R. 1, Page ID 4.) On his loan application, he provided two telephone numbers, a home number and a work number. (Hill Depo., R. 18, Page ID 70-74.) Around 2006, Hill obtained his first cellphone, and when he did, he discontinued use of his home number. (*Id*. at Page ID 74.)

Servicing of Hill's loan transferred to Appellee Homeward Residential, Inc. fka American Home Mortgage Servicing, Inc. (MSJ Aff., R. 19-1, Page ID 154.) Homeward's records initially reflected the same two telephone numbers that Hill provided on his loan application, but Homeward was unable to reach him at his home number. (*Id*. at Page ID 155; Kearse Depo., R. 19-2, Page ID 175-176.)

On January 3, 2008, Hill called Homeward and provided his cellphone number in place of his home number. (MSJ Aff., R. 19-1, Page ID 155; Kearse

Depo., R. 19-2, Page ID 176; Hill Depo., R. 18, Page ID 79-80; Trial, R. 60, Page ID 1370.) Prior to that date, Homeward did not have Hill's cellphone number. (Kearse Depo., R. 19-2, Page ID 178-180.) From that date forward, Homeward's records reflected Hill's cellphone as the primary number on his account. (MSJ Aff., R. 19-1, Page ID 155.)

On July 15, 2010, Hill asked Homeward not to call his work number anymore, instructing Homeward to call his cellphone instead. (Hill Depo., R. 18, Page ID 84-85; Trial, R. 60, Page ID 1371; MSJ Aff., R. 19-1, Page ID 155.) Per Hill's request, Homeward removed his work number from its records, leaving his cell as the only contact number. (MSJ Aff., R. 19-1, Page ID 155.)

Hill ultimately defaulted on his loan. (Hill Depo., R. 18, Page ID 86-87.) From May 2011 through January 2013, he filled out and provided to Homeward numerous applications and documents in an effort to obtain a loan modification. Among them were:

1. A May 4, 2011, Making Home Affordable Application on which he identified his cell number as his home number, and left blank the space for a cell number. (Admissions, R. 19-3, Page ID 191-192, 208-209; Trial, R. 60, Page ID 1373-1374.)

2. A May 4, 2011, Financial Analysis for Loss Mitigation Workout on which he provided his cell number as his home number. (Admissions, R. 19-3, Page ID 190-191, 206-207; Trial, R. 60, Page ID 1375-1376.)

3. A May 4, 2011, Form 4506-T on which he provided his cell number. (Admissions, R. 19-3, Page ID 186, 203; Trial, R. 60, Page ID 1376-1377.)

3

4. A June 8, 2011, Form 4506-T on which he provided his cell number. (Admissions, R. 19-3, Page ID 186-187, 204; Trial, R. 60, Page ID 1377-1378.)

5. A July 23, 2012, Uniform Borrower Assistance Form on which he provided his cell number as his and his co-borrower's home number and left blank both spaces requesting cell numbers. (Admissions, R. 19-3, Page ID 193-194, 210-211; Trial, R. 60, Page ID 1378-1379.)

6. An email dated in or around August 2012, on which he provided his contact information, including his cell number. (Admissions, R. 19-3, Page ID 185, 202; Trial, R. 60, Page ID 1380-1381.)

7. A November 25, 2012, Making Home Affordable Program Request for Mortgage Assistance on which he provided his cell number as both his and his co-borrower's home number, and as their cell or work number. (Admissions, R. 19-3, Page ID 194-196, 212-213; Trial, R. 60, Page ID 1381-1382.)

8. A January 10, 2013, Form 4506-T on which he provided his cell number. (Hill Depo., R. 18, Page ID 134; Trial, R. 60, Page ID 1383-1384.)

9. A January 15, 2013, Form 4506-T on which he provided his cell number. (Admissions, R. 19-3, Page ID 189, 205; Trial, R. 60, Page ID 1384-1385.)

10. A January 24, 2013, Making Home Affordable Request for Mortgage Assistance on which he provided his cell number as both his and his co-borrower's home number and cell or work number. (Admissions, R. 19-3, Page ID 196-197, 214-215; Trial, R. 60, Page ID 1385-1388.)

Hill knew that by repeatedly providing only his cell number, Homeward would use that number if it needed to reach him. (Hill Depo., R. 18, Page ID 106.)

In addition to repeatedly providing his cell as the only number at which to be contacted, Hill provided written consent to such contacts. The July 23, 2012, Uniform Borrower Assistance Form provided, just above Hill's signature:

> I consent to being contacted concerning this request for mortgage assistance at any cellular or mobile telephone number I have provided to the Lender. This includes text messages and telephone calls to my cellular or mobile telephone.

(Admissions, R. 19-3, Page ID 193-194, 211; Trial, R. 60, Page ID 1378-1380.) Similarly, both Making Home Affordable Program Request for Mortgage Assistance forms, one dated November 25, 2012, and one dated January 24, 2013, provided just above Hill's signature:

> I consent to being contacted concerning this request for mortgage assistance at any e-mail address or cellular or mobile telephone number I have provided to the Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.

(Admissions, R. 19-3, Page ID 194-197, 213, 215; Trial, R. 60, Page ID 1381-1383, 1385-1388.)

As a result of Hill's default on his loan and his efforts to obtain a loan modification, and further as a result of his repeatedly providing his cellphone number for five years, from January 3, 2008, to January 24, 2013, Homeward necessarily used that number to reach him regarding his loan. (MSJ Aff., R. 19-1, Page ID 155.) Hill admits that he often did not answer calls that he suspected were from Homeward, nor did he always return them (Hill Depo., R. 18, Page ID 102,

114, 117; Trial, R. 60, Page ID 1391-1393), requiring Homeward to call again in its effort to reach him.  (MSJ Aff., R. 19-1, Page ID 155.)  Hill never asked Homeward to stop calling his cellphone.  (Hill Depo., R. 18, Page ID 27; Trial, R. 60, Page ID 1389.)

On April 23, 2013—three months after last providing his cell number to Homeward and without ever asking Homeward to stop calling it—Hill filed the underlying complaint alleging that Homeward had called his cellphone without his prior express consent.  He asserted two claims: knowing and wilful violations of the TCPA, and negligent violations of the TCPA.[1]  (Complaint, R. 1, Page ID 6-8.)

**B.    The events preceding the trial**

The district court set this matter for a final pretrial on September 3, 2014. (Notice, R. 32, Page ID 940.)  The matter was set for trial beginning October 20, 2014, at 9:00 a.m.  (Scheduling Order, R. 11, Page ID 41.)

At the final pretrial, in the presence of the district court judge, Hill's counsel asked Homeward's counsel if he would have to subpoena a witness to appear at trial, and Homeward's counsel advised that he would.  (Notice of Clarification, R. 39, Page ID 982; Trial, R. 60, Page ID 1262-1265.)  That was, in fact, the second time that Homeward's counsel had so advised Plaintiff's counsel.  (Notice of Clarification, R. 39, Page ID 982.)

---

[1] Hill also asserted a claim under Ohio's Consumer Sales Practices Act, but later advised the Court that he would not pursue it.  (Pretrial Order, R. 10, Page ID 38.)

On September 29, 2014, Hill filed his first Notice of Subpoena.  (1st Subpoena, R. 36, Page ID 955-961.)  Attached to the notice was a subpoena issued from the United States District Court for the Northern District of Ohio.  (*Id*. at Page ID 957-959.)  The subpoena was sent to Homeward's Ohio statutory agent for service of process, and was directed to an unidentified "corporate representative."  (*Id*. at Page ID 957.)  Attached to the subpoena was a list of twenty-six topics to which the unidentified representative was to testify at trial. (*Id*. at Page ID 960-961.)

On October 10, 2014, Homeward objected to, and moved to quash the purported subpoena due to its many shortcomings.  (1st Motion to Quash, R. 38, Page ID 970-980.)  Homeward argued that the subpoena was invalid because it: 1) did not identify a witness; 2) did not comply with the geographical limitations of Fed.R.Civ.P. 45; 3) did not issue from the correct court; 4) was a belated effort to seek discovery; and 5) did not tender the necessary fees.  (*Id*. at Page ID 971.)

On October 13, 2014, one week prior to trial, Hill filed his second Notice of Subpoena, attaching a subpoena issued from the Southern District of Ohio.  (2nd Subpoena, R. 40, Page ID 985-991.)  But it was again addressed to a "corporate representative" and mailed to Homeward's Ohio statutory agent.  (*Id*., Page ID 987.)  Attached to the subpoena was a list of twenty-three topics to which the unidentified representative was to testify at trial. (*Id*. at Page ID 990-991.)

Homeward again objected and moved to quash.  (2nd Motion to Quash, R. 44, Page ID 999-1010.)  Although the second subpoena issued from the correct court, Homecomings argued that the other shortcomings remained, with yet an additional one; the second subpoena: 1) did not identify a witness; 2) did not comply with the geographical limitations of Fed.R.Civ.P. 45; 3) was a belated effort to seek discovery; 4) did not tender the necessary fees; and 5) was sent only three business days prior to trial, thus failing to allow a reasonable time to comply. (*Id*. at Page ID 1000.)

The district court found the first subpoena mooted by the second.  (Order, R. 43, Page ID 998.)  It then granted Homeward's motion to quash the second subpoena, agreeing that all of the deficiencies identified by Homeward existed, and noting that Hill had "conflated the procedures of Federal Rule of Civil Procedure 30(b)(6) with Rule 45 practice."  (Order, R. 45, Page ID 1011.)

Immediately after the court journalized that order, Hill filed a Notice of Trial Deposition of Corporate Representative.  (Notice of Trial Deposition, R. 46, Page ID 1013-1016.)  He cited to Fed.R.Civ.P. 30(b)(6), and stated his intention to take the "deposition" in the courtroom, on October 20, 2014, at 9:00 a.m.; the very place, date, and time that trial was set to begin.  (*Id*. at Page ID 1013.)  Attached to the notice was the same list of twenty-three topics on which he wanted to "depose" the corporate representative.  (*Id*. at Page ID 1015-1016.)

Homeward immediately objected. (Objection, R. 47, Page ID 1017-1021.) It argued that Hill's Notice of Trial Deposition was improper because: 1) it was a belated effort to seek discovery after discovery was long closed; 2) two business days was not a reasonable time to comply; and 3) Hill could not take a "deposition" at trial. (*Id*. at Page ID 1018-1019.)

The district court again agreed. (Order, R. 49, Page ID 1038-1039.) The court noted that Hill was "now attempting an end-run around the failed subpoenas," agreed with Homeward that the filing was "a Rule 45 trial subpoena disguised as a Rule 30(b)(6) deposition notice," and concluded that such a filing "is not permissible." (*Id*. at Page ID 1038.)

The next day—the Friday before the Monday trial—Hill filed a motion to compel Homeward to provide him with a trial witness. (Motion to Compel, R. 52, Page ID 1054-1057.) On the first day of trial, the court denied from the bench Hill's motion to compel. (Order, R. 57, Page ID 1252.)

### C. The trial

The trial began as scheduled, on October 20, 2014. (Minute Entry, R. 53, Page ID 1058.) The next day, the jury returned its verdict in favor of Homeward. (Minute Entry, R. 55, Page ID 1247.) The district court accepted the jury's verdict and issued judgment. (Judgment, R. 58, Page ID 1254-1255.) It is from that judgment that Hill appeals. (Notice of Appeal, R. 59, Page ID 1256-1257.)

### III.    SUMMARY OF THE ARGUMENT

The TCPA makes it unlawful for a person to call a cellular telephone using certain equipment specified by the statute, without the prior express consent of the called party. 47 USC §227(b)(1)(A)(iii). The TCPA requires the FCC to prescribe regulations implementing its provisions. 47 USC §227(b)(2). Under that mandate, the FCC issued binding regulations defining "prior express consent," concluding that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 559 ¶ 1 (2008).

In his first argument, Hill contends that the district court erred by denying his motion for summary judgment. Hill presented no evidence, however, that Homeward had ever used the equipment defined in the TCPA. Further, it was undisputed that Hill repeatedly provided to Homeward, his "creditor," his cellular telephone number in connection with his "existing debt," and even instructed Homeward to use that number. Under the FCC's binding rules, Hill gave Homeward his prior express consent, thereby precluding any finding of a TCPA violation, and precluding summary judgment in his favor. The district court did not err in denying Hill's motion.

Regarding Hill's second argument, Fed.R.Civ.P. 45 sets out the process a party must follow to secure a trial witness. Hill failed to properly follow any aspect of that Rule, then moved one business day before trial for the district court to compel Homeward to provide him with a witness. The district court did not err by refusing to require Homeward to provide Hill with a witness.

Regarding Hill's third argument, in instructing the jury on the definition of "prior express consent," the district court quoted the FCC's language exactly. The FCC's guidance on this issue is binding on the district court, and the district court did not err in precisely following it.

## IV.    LAW AND ARGUMENT

For the sake of clarity and logical flow, Homeward will address Hill's three arguments out of order, addressing the first, then third, then second.

### A.    The District Court erred in denying Mr. Hill's Motion for Summary Judgment.

Hill first argues that the district court erred by denying his motion for summary judgment. The district court did not err.

This Court reviews a decision denying summary judgment *de novo*. *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 377 (6th Cir.2008). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering such a motion, the district court must construe all reasonable

11

inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, there was more than sufficient disagreement to preclude summary judgment in favor of Hill.

The TCPA makes it unlawful for a person to make any call to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice—as those terms are defined in the statute—without the prior express consent of the called party. 47 USC §227(b)(1)(A)(iii). Thus, for Hill to prevail on his TCPA claim, he had to "establish that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without [his] prior express consent." *Zehala v. Am. Express*, No. 2:10-cv-848, 2011 WL 4484297, at *5 (S.D.Ohio Sept. 26, 2011).

In his motion for summary judgment, Hill failed to set forth any evidence establishing that there was no genuine issue of material fact as to the type of equipment Homeward used, or as to his consent. The district court did not err in denying his motion.

### 1. *There was no evidence establishing that Homeward used an automatic dialing system or artificial or prerecorded voice.*

Contrary to Hill's representations to this Court, Homeward never "conceded" that it used an autodialer as defined by the TCPA. (Hill Brief at pp. 2, 8.) While the term "autodialer" or "automatic dialer" was used generically during the deposition of Homeward's representative, Crystal Kearse, it was expressly not an admission that the dialing system fit the technical definition under the TCPA. (Kearse Depo., R. 23, Page ID 256.) The district court correctly recognized this. (Opinion and Order, R. 31, Page ID 931.) Simply because a system is capable of autodialing a phone number does not mean that it is an "automatic telephone dialing system" as defined by the TCPA.

The TCPA defines an automatic telephone dialing system as: "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Hill devoted a mere three sentences of his motion for summary judgment to this material element of his claims. (Hill MSJ, R. 26, Page ID 877.) He argued simply that Homeward's "Predictive Dialer uses borrowers' telephone numbers contained within Homeward's database to make robocalls to borrowers," and cited to Kearse's deposition in purported support. (*Id*.)

In response, Homeward pointed out that Kearse's testimony did not support Hill's statement and was, in fact, to the contrary. (MSJ Opp., R. 28, Page ID 913.)

13

Kearse testified that Homeward's phone system only dialed numbers that were manually entered into its servicing platform. (Kearse Depo., R. 23, Page ID 276-278.) Because the phone system only dialed manually entered numbers that were stored in its servicing platform, there was no evidence that Homeward's phone system itself had the capacity to store or produce numbers, and no evidence whatsoever that it used a "random or sequential number generator," which is "required for a device to be considered an 'automatic telephone dialing system' under section 227(a)(1) of the TCPA." *Hamilton v. Spurling*, No. 3:11cv00102, 2013 WL 1164336, at *4 (S.D.Ohio Mar. 20, 2013).

Similarly, regarding the use of an artificial or prerecorded voice, Hill devoted only one sentence of his motion to this material element of his claims, but his citation to the record did not support even that one sentence (Hill MSJ, R. 26, Page ID 877.) He claimed that Homeward "repeatedly left automated messages" on his cellular telephone, and cited to Kearse's deposition and an exhibit attached to his motion in purported support. (*Id*.) But as Homeward pointed out in its response, the attached exhibit did not establish that a single automated message was left on Hill's cellphone, and the cited deposition testimony did not even mention such messages. (MSJ Opp., R. 28, Page ID 914.)

Hill presented no summary judgment evidence that would have allowed the district court to conclude that Homeward used an automatic telephone dialing

system as defined by the TCPA, and in fact, the evidence was to the contrary. Nor did he present any evidence allowing the district court to conclude that Homeward used an artificial or prerecorded voice. Having failed to produce any evidence supporting the second element of his TCPA claim, Hill failed to carry his summary judgment burden and the district court did not err in denying his motion.

### 2. *Hill gave his prior express consent to be contacted on his cellular telephone.*

In Homeward's motion for summary judgment, it set forth law and evidence that Hill gave his prior express consent to calls on his cellphone. (MSJ, R. 19, Page ID 136-146.) Hill presented nothing to the contrary except his own incorrect interpretation of the law. (Hill MSJ, R. 26, Page ID 882-884.) The district court correctly denied Hill's motion for summary judgment for this reason as well.

#### a. *Courts are bound by FCC rulings under the Hobbs Act.*

The TCPA requires the FCC to prescribe regulations implementing its provisions. 47 USC §227(b)(2). The Hobbs Act and the Federal Communications Act work in tandem to vest in the federal courts of appeal exclusive jurisdiction to review final FCC rulings. The Federal Communications Act provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter… shall be brought as provided by and in the manner prescribed in [the Hobbs Act]." 47 U.S.C. § 402(a). Concomitantly, the Hobbs Act provides that "[t]he court of appeals… has exclusive jurisdiction to enjoin, set aside,

suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by [the Federal Communications Act]." 28 U.S.C. § 2342. The Hobbs Act further provides a time limit on the jurisdiction of appellate courts, stating that "[a]ny party aggrieved by the [FCC's] final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." *Id.* at § 2344.

Applying these statutes, this Court recently determined that the district court did not have jurisdiction to review or overrule a 2005 FCC ruling relating to the TCPA, and neither did this Court, given the sixty-day limitation. *Leyse v. Clear Channel Broad., Inc.*, 545 Fed.Appx. 444, 454-459 (6th Cir.2013). *See also Avio, Inc. v. Alfoccino, Inc.*, 18 F.Supp.3d 882, 894 (E.D.Mich.2014) (on-point final order of the FCC is controlling under the Hobbs Act), citing 28 U.S.C. § 2342(1), *La Voz Radio de la Communidad v. F.C.C.*, 223 F.3d 313, 317-320 (6th Cir.2000), and *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir.2010).

*b. The FCC has defined prior express consent under the TCPA.*

In 1992, the FCC issued rules and regulations defining "prior express consent" under the TCPA. The FCC determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the

contrary.'"  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992).

On January 4, 2008, the FCC reaffirmed that guidance specifically in the context of the creditor/debtor relationship, further clarifying that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 559 ¶ 1 (2008).  Hill disagrees with the FCC's interpretation, preferring instead to apply its guidance regarding telemarketers—requiring express *written* consent—to creditors; but his speculation about what the FCC allegedly meant to do does not comport with what the FCC actually did do.  (Hill Brief at 15-20.)  The FCC expressly distinguishes creditors from telemarketers, stating that: "calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'"  23 FCC Rcd at 565, ¶ 11.

> Although the FCC revised its TCPA rules in 2012 to require prior express written consent for telemarketing calls using an ATDS, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838, ¶ 20 (2012)…, the FCC has not revised its statement in its 2008 Ruling that "calls solely for the purpose of debt collection ... do not constitute telemarketing," *see* 2008 Ruling, 23 FCC Rcd. at 565, ¶ 11.  *See also* 2012 FCC Order, 27 FCC Rcd. at 1841, ¶ 28 (noting FCC was "maintain[ing] the existing consent rules for nontelemarketing informational calls").

*Penn v. NRA Group, LLC*, No. Civ. JKB–13–0785, 2014 WL 2986787, at *1 (D.Md. Jul. 1, 2014).

Following the FCC's binding rulings relating to <u>*debt collection*</u> calls, case law is virtually unanimous that voluntarily furnishing a cell number to a contractual counterparty constitutes prior express consent. *Saunders v. NCO Fin. Sys., Inc.*, 910 F.Supp.2d 464, 467 (E.D.N.Y.2012) (collecting cases). In fact, courts across the country have relied on these FCC rulings to summarily dismiss TCPA claims where the called party voluntarily provided a cellphone number to the calling party. *See, e.g., id.* at 467-469 (granting summary judgment to defendant on TCPA claim); *Baird v. Sabre Inc.*, 995 F.Supp.2d 1100, 1102-1106 (C.D.Cal.2014) (same); *Chavez v. Advantage Grp.*, 959 F.Supp.2d 1279, 1281-1283 (D.Colo.2013) (same); *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-cv-1721-BEN (WVG), 2014 WL 1744136, at *10-12 (S.D.Cal. Apr. 30, 2014) (same); *Kenny v. Mercantile Adjustment Bureau, LLC*, No. 10-CV-1010, 2013 WL 1855782, at *5-8 (W.D.N.Y. May 1, 2013) (same); *Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-cv-1704-MC, 2013 WL 3995004, at *5 (D.Or. Aug. 1, 2013) (same); *Cavero v. Franklin Collection Serv. Inc.*, No. 11-22630-CIV, 2012 WL 279448, at *3-4 (S.D.Fla. Jan. 31, 2012) (same); *Wills v. Optimum Outcomes, Inc.*, No. 1:13-CV-26-PMW, 2014 WL 220707, at *3-4 (D.Utah Jan. 21, 2014) (granting motion to dismiss TCPA claim); *Murphy v. DCI Biologicals Orlando,*

*LLC* , No. 6:12-cv-1459-ORL, 2013 WL 6865772, at \*6-8 (M.D.Fla. Dec. 31, 2013) (same); *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 WL 5511039, at \*5-6 (N.D.Ala. Nov. 9, 2012) (same).

Under the binding FCC rulings and virtually unanimous case law, a borrower's provision of a cellphone number to a creditor in relation to an existing debt is "clear and unmistakable" prior express consent for the creditor to call that number regarding the debt. *Pinkard*, 2012 WL 5511039 at \*5. Not only is that conclusion mandated by the FCC rulings; "[t]o hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called." *Id*.

Hill never disputed that he voluntarily provided his cellphone number to Homeward on January 3, 2008. (Hill Depo., R. 18, Page ID 84; Trial, R. 60, Page ID 1389.) He admitted that in July 2010, he actually instructed Homeward to use that number. (Hill Depo., R. 18, Page ID 84-85; Trial, R. 60, Page ID 1371; MSJ Aff., R. 19-1, Page ID 155.) He further admitted that between 2011 and 2013, he repeatedly provided his cell number to Homeward, to the exclusion of other numbers, even identifying it as his home number. (Admissions, R. 19-3, Page ID 185-187, 189, 190-197; Trial, R. 60, Page ID 1371-1389.) Having admitted that he repeatedly gave Homeward his cell number and only his cell number, and that he expressly asked to be contacted on it, there was, at the very least, a genuine issue

19

of material fact on the issue of prior express consent that precluded summary judgment in Hill's favor. The district court did not err in denying Hill's motion.

**B.    The District Court erred in instructing the jury that any autodialed calls made to wireless numbers provided to a creditor are permissible calls made with the "prior express consent" of the called party.**

In his third argument, Hill contends that the district court erred by refusing to instruct the jury that, for provision of a cellphone number to constitute prior express consent, it had to be given at the time the debt was originated. Hill's argument fails both on the express language of the January 4, 2008, FCC ruling, and on the reasoning of courts that have already considered and rejected it.

A district court's decision regarding jury instructions may be reversed "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir.1990). The district court's instructions to the jury were none of these.

### *1.  Hill's argument impermissibly limits the FCC's express conclusion regarding prior express consent.*

The opening paragraph of the 2008 FCC ruling states the FCC's conclusion: "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." 23 FCC Rcd. at 559, ¶ 1. That same conclusion was restated at page 564, paragraph 9. In

instructing the jury on what "prior express consent" means, the district court quoted that language exactly. (Jury Instructions, R. 54, Page ID 1134.)

Nevertheless, Hill argues that the court's instruction was error because it did not track with his own interpretation of that ruling. In the body of the 2008 ruling, the FCC wrote that prior express consent is granted if the number is provided "during the transaction that resulted in the debt owed." 23 FCC Rcd. at 564-565, ¶ 10. Hill argues that this language somehow limits the conclusion stated at the beginning of the ruling to mean that the number had to be provided at the origination of the loan. He cites no authority for that very limited interpretation, however, and it is contradicted by the FCC's final, binding conclusion.

The 2008 ruling permits calls made "in connection with an _existing_ debt." (Emphasis added.) 23 FCC Rcd. at 559, ¶ 1. The FCC cited as an example only the provision of such a number at the time of application. _Id_. at 564, ¶ 9. _See also Mais v. Gulf Coast Collection Bureau, Inc._, 768 F.3d 1110, 1122 (11th Cir.2014) ("While the 2008 FCC Ruling listed the completion of 'a credit application' as an example of the provision of a cell phone number to a creditor, the Commission did so illustratively, not exclusively"). There is nothing in the 2008 ruling requiring that, to constitute consent, the number must be provided at origination, as opposed to some later time that is still "in connection with an existing debt."

21

Considering the same argument made here by Hill, the court in *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D.Wis.2014), concluded that the FCC's ruling did not support the desired limitation:

> The language of the 2008 TCPA Order cuts against the plaintiff's argument—namely, the meaning of the phrase "during the transaction that resulted in the debt owed." One definition of "transaction" is: "the act or process of doing business with another person, company, etc." Mirriam–Webster's Online Dictionary, *available* at http://www.merriam-webster.com/dictionary/transaction. One reasonable interpretation of the FCC's use of "transaction," then, is that during the time the consumer is still in the "process of doing business" with the creditor—i.e. by making payments, inquiring about the debt, etc.—the consumer's provision of a number to the creditor can express consent to be autodialed at that number.
>
> The plaintiff's interpretation also appears to conflict with the 2008 TCPA Order's use of the phrases "in connection with an existing debt" and "regarding the debt"; both phrases could be read to permit provision of debtor's cell phone numbers after origination of the debt.

(Internal citations and footnotes omitted.) *Id*. at 518. *See also Sartori v. Susan C. Little & Assoc., P.A.*, 571 Fed.Appx. 677, 683 (10th Cir.2014) (upholding summary judgment against plaintiff in TCPA case where cell number was provided to creditor over a year after debt was incurred). The express language of the 2008 FCC ruling does not support or permit Hill's limited interpretation.

## 2. *Hill's argument is illogical and unsupported by the FCC's reasoning.*

In addition to the fact that Hill's position is contradicted by the very ruling upon which he relies, it is also illogical. In arriving at its conclusion, the FCC focused on the voluntariness of the provision of the phone number:

> We conclude that *the provision of a cell phone number to a creditor*, *e.g.*, as part of a credit application, *reasonably evidences prior express consent* by the cell phone subscriber to be contacted at that number regarding the debt.   In the *1992 TCPA Order*, the Commission determined that "*persons who knowingly release their phone numbers have in effect given their invitation or permission to be called* at the number which they have given, absent instructions to the contrary."

(Emphasis added.)   23 FCC Rcd at 564, ¶ 9, quoting 7 FCC Rcd. at 8769, ¶ 31.

There is no logical reason to conclude that the voluntary provision of a cellphone number at the origination of a loan should constitute prior express consent, while such voluntary provision later in the relationship should not.

That was exactly the conclusion reached in *Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011).  In *Moore*, the borrower made the same argument that Hill makes here, based on the same language.  *Id*. at *10.  That court quickly rejected it, writing: "Nowhere in the FCC's ruling did it state that a phone number must be given at the time the account is opened to constitute 'prior express consent.'"  *Id*.  The court continued:

> Although the FCC did not define the exact parameters of the phrase "during the transaction that resulted in the debt owed," *a commonsense reading of that phrase does not lead to the conclusion that a phone number must be given at the precise time the account is activated.* Moreover, given that the FCC emphasized that the relevant issue in evaluating "prior express consent" is whether a phone number has voluntarily been provided to the creditor, *it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute "prior express consent"* to be called at that number, *but that the equally voluntary provision of a contact number sometime after the account is opened would not.*

23

(Emphasis added.)  *Id.*

Hill admittedly provided his cell number to Homeward in connection with his existing debt, thereby providing "prior express consent."  His effort to limit such consent to the time of loan origination is contrary both to the FCC's final conclusion and to logic.  The district court properly instructed the jury on "prior express consent" by carefully quoting the FCC's ruling.  There was no error in that instruction; to the contrary, the district court was bound by that language under the Hobbs Act.  Hill's third argument must be overruled.

### C.    The District Court erred in failing to allow Mr. Hill to compel the attendance of Homeward's corporate representative at trial.

In his second argument, Hill contends that the district court erred by quashing his purported trial subpoenas, overruling his notice of trial deposition, and refusing to compel Homeward to produce a witness for his benefit at trial.  The district court did not err in refusing to do for Hill what he failed to do for himself.

This Court reviews discovery-related rulings, rulings on motions to quash subpoenas, and evidentiary rulings all "under the highly deferential abuse-of-discretion standard."  *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir.2014).  *See also Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 354-55 (6th Cir. 1984); *U.S. v. Morales*, 687 F.3d 697, 701 (6th Cir. 2012).  There is no abuse of discretion unless the district court's decision is: (1) based on an erroneous conclusion of law; (2) based on clearly erroneous factual findings; or (3) "clearly

unreasonable, arbitrary or fanciful." *Loyd* at 588, quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir.2002). There was no abuse of discretion here.

### 1. *Hill's purported trial subpoenas were invalid.*

A plaintiff seeking to compel a witness to appear at trial must do so by subpoena, in accordance with Fed.R.Civ.P. 45. *Kennedy v. Settles*, No. 10–299–HRW, 2014 WL 1621999, at *6 (E.D.Ky. April 22, 2014). Hill tried to serve two trial subpoenas on Homeward, both of which failed to comply with numerous mandatory requirements set forth in that Rule. (1st Subpoena, R. 36, Page ID 955-961; 2nd Subpoena, R. 40, Page ID 985-991.) Homeward moved to quash them both. (1st Motion to Quash, R. 38, Page ID 970-980; 2nd Motion to Quash, R. 44, Page ID 999-1010.) The district court found the first subpoena mooted by the second (Order, R. 43, Page ID 998), and granted Homeward's motion to quash the second (Order, R. 45, Page ID 1011-1012). The district court did not abuse its discretion because Hill's efforts to subpoena a trial witness were invalid.

#### a. The first subpoena issued from the wrong court.

Federal Rule 45(a)(2) provides that a subpoena "must issue from the court where the action is pending." This action was pending in the United States District Court for the Southern District of Ohio. Hill's first subpoena issued from the United States District Court for the Northern District of Ohio. (1st Subpoena, R. 38, Page ID 957.) The first subpoena was invalid for this reason alone.

> ### b. Both subpoenas failed to be served on a "named person" and were, instead, a belated effort to seek discovery.

To properly serve a trial subpoena, it must be directed to a "person," and a copy must be delivered to that "named person." Fed.R.Civ.P. 45(a)(1)(A)(iii) & (b)(1). Hill's subpoenas were not directed to a "person" and were not properly served on a "person." Rather, both subpoenas were served on Homeward's Ohio statutory agent, were directed to an unnamed "corporate representative," and set forth more than twenty topics on which Hill sought testimony at trial. (1st Subpoena, R. 36, Page ID 957, 960-961; 2nd Subpoena, R. 40, Page ID 989, 990-991.) His trial subpoenas were, in reality, improper efforts to belatedly seek discovery under Fed.R.Civ.P. 30(b)(6).

Civil Rule 30(b)(6) falls under Title V, the "Disclosures and Discovery" portion of the Civil Rules. Rule 30(b)(6) allows a notice of deposition or subpoena—for discovery purposes—to be directed to an entity describing the topics on which information is sought, in response to which the entity identifies the appropriate witness(es) to testify.

Contrarily, Rule 45 appears under Title VI, the "Trials" portion of the Civil Rules. Rule 45(b)(1) requires trial subpoenas to be served upon a "named person." "There is no provision allowing for the use of [a 30(b)(6)] notice under Rule 45… without specifically designating a 'named person' within the jurisdiction to testify…. [U]se of a Rule 30(b)(6) notice upon unnamed Defendant corporat[e]

26

representatives, for designated testimony at trial, is… improper" because a plaintiff may not "use a discovery device—a Rule 30(b)(6) notice—under the guise of a trial subpoena." *Smith v. Royal Caribbean Cruises, Ltd.*, 302 F.R.D. 688, 694 (S.D.Fla.2014).

In *Hill v. Nat'l R.R. Passenger Corp.*, No. Civ. A. 88–5277, 1989 WL 87621 (E.D.La. Jul. 28, 1989), the plaintiff served a Rule 30(b)(6)-type deposition notice in the form of a Rule 45 trial subpoena, designating thirteen areas of inquiry. *Id.* at *1. The court granted the defendant's motion to quash, writing:

> Rule 30(b)(6) specifically applies to the deposition of a corporation. Rule 45 of the Federal Rules of Civil Procedure provides the proper procedure by which a person may be compelled to testify at a trial. There is no provision allowing the use of the 30(b)(6)-type designation of areas of inquiry or allowing service on a corporation through an agent for service of process in order to compel a particular person, who may be a corporate employee outside the subpoena power of the court, to testify at the trial. Further, plaintiff has not pointed the Court to any specific authority allowing such a procedure nor has the Court found any authority supporting the plaintiff's position.

*Id.*

Similarly, in *In re Otero Cnty. Hosp. Ass'n, Inc.*, No. 11–11–13686 JL, 2014 WL 184984 (Bankr.D.N.M. Jan. 15, 2014), the court wrote:

> [T]o require a corporation to designate a representative, a litigant must rely on [Rule 30(b)(6)]. Rule 30(b)(6) applies to deposition testimony, not trial testimony. For this reason Rule 36(b)(6) may not be used in conjunction with Rule 45 to serve a subpoena on a corporation for purposes of securing trial testimony without naming a particular individual.

(Footnotes omitted.)  *Id.* at *10.  *See also Dopson-Troutt v. Novartis Pharm. Corp.*, 295 F.R.D. 536, 539-540 (M.D.Fla.2013) (quashing subpoena because Rule 30(b)(6) does not apply to subpoenas for trial testimony).

During discovery, Hill served a Rule 30(b)(6) deposition notice on Homeward, in which he identified thirteen topics of testimony.  (1st Motion to Quash, R. 38, Page ID 978-980.)  Homeward provided Kearse in response. (Kearse Depo., R. 23, Page ID 228-287.)  Hill requested no other depositions, and discovery closed on February 28, 2014.  (Scheduling Order, R. 10, Page ID 40.)

Nevertheless, Hill's trial subpoenas sought testimony on over twenty topics, well more than he ever requested in discovery.  (1st Subpoena, R. 36, Page ID 960-961; 2nd Subpoena, R. 40, Page ID 990-991.)  His trial subpoenas were nothing more than an attempt at belated discovery long after discovery was closed.

There is nothing in the Federal Rules that required Homeward to determine what witnesses Hill would need at trial.  That was something Hill needed to determine during discovery.  His service of what was, in reality, Rule 30(b)(6) deposition notices served as noncompliant Rule 45 trial subpoenas was invalid.

### c.  Both subpoenas failed to tender the required fees.

To properly serve a subpoena under Rule 45, the subpoena must be accompanied by "the fees for 1 day's attendance and the mileage allowed by law." Fed.R.Civ.P. 45(b)(1).  Hill did not tender such fees, constituting yet another

reason why the subpoenas were invalid.  *See, e.g., Brumley v. Albert E. Brumley & Sons, Inc.*, No. 3:08–1193, 2010 WL 2696486, at *1 (M.D.Tenn. Jul. 7, 2010) (quashing subpoenas for failure to tender the necessary fees.)

> ### d. Both subpoenas failed to comply with the geographical limitations set forth in Rule 45(c).

Rule 45 was amended effective December 1, 2013, for the purpose of resolving a split among courts regarding subpoenaing parties and party officers. *Dopson-Troutt*, 295 F.R.D. at 539 n.2.  As revised, amended Rule 45(c)(1) "does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state."  *Id.*, quoting comments to amended Rule.

Rule 45(d)(3)(A)(ii) requires that a trial subpoena be quashed if it demands compliance beyond those geographical limits.  Homeward does not have any offices or employees located within those geographical limits.  (1st Motion to Quash, R. 38, Page ID 974; 2nd Motion to Quash, R. 44, Page ID 1003-1004.) Thus, the district court was required to quash the subpoenas.

> ### e. The second subpoena failed to allow for a reasonable time to comply.

In addition to all of its other failures, under Rule 45(d)(3)(A)(i), the district court was also required to quash the second subpoena because it did not allow a reasonable time to comply.  The subpoena was served on Homeward's Ohio

statutory agent on Tuesday, October 14, 2014. (Notice of Service, R. 42, Page ID 997.) Trial was scheduled to begin on Monday, October 20, 2014. (Scheduling Order, R 11, Page ID 41.) Even if such service was proper—and it was not—this allowed Homeward only three business days to identify the appropriate witness(es) to testify to Hill's twenty-three topics, to clear respective schedules, to prepare the witness(es), and to make travel arrangements. Under no circumstance could this be considered a reasonable amount of time. *See, e.g., McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601, at *2 (S.D.Ohio Aug. 14, 2006) (Kemp, M.J.) ("Rule 45(c)(2)(B) appears to set a presumptive time of 14 days after service to respond" as a minimum); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D.Ohio 2002) (finding one week unreasonable); *Brown v. Hendler*, No. 09 CIV 4486 RLE, 2011 WL 321139, *2 (S.D.N.Y. Jan. 31, 2011) (finding nine days unreasonable); *Green v. MOBIS Alabama, LLC*, No. 2:12CV277-MEF, 2014 WL 2041857, *2 (M.D.Ala. May 16, 2014) (finding less than five business days unreasonable). Rule 45(d)(3)(A)(i) required the district court to quash the second subpoena for this reason as well.

Hill had the same opportunity that every party going to trial has to subpoena a witness under Rule 45, but he failed in virtually every way to comply with that Rule's requirements. The district court did not err in refusing to enforce Hill's purported subpoenas.

### 2. *Hill's 30(b)(6) notice of trial deposition was invalid.*

When Hill's efforts to serve a Rule 30(b)(6) deposition notice disguised as a Rule 45 trial subpoena failed, he then served what he called a Notice of Trial Deposition of Corporate Representative. (Notice of Trial Deposition, R. 46, Page ID 1013-1016.) He filed this on Thursday, October 16, 2014, allowing Homeward only one business day to comply. He again attached a list of twenty-three topics of testimony; considerably more than he ever sought in discovery. (*Id.* at Page ID 1015-1016.) Because that notice was also inappropriate, Homeward objected. (Objection, R. 47, Page ID 1017-1021.) The district court sustained the objection. (Order, R. 49, Page ID 1038-1039.)

In his notice, Hill sought the appearance of a corporate representative in the courtroom on October 20, 2014, at 9:00 a.m.; the very place, date, and time that trial was scheduled to begin. Hill apparently believed that the district court should allow him to take a "deposition" at trial. He apparently also believed that if he called his filing a Notice of Trial Deposition, then he would not be required to comply with the mandates of Rule 45: he would not have to properly name and serve an individual; he would not have to comply with the geographical limitations; he would not have to allow a reasonable time to comply; and he would not have to tender the necessary fees.

31

Rule 30(b)(6), however, does not require a corporation "to produce a knowledgeable representative for deposition…. after discovery has closed." *Stuhlmacher v. Home Depot U.S.A., Inc.*, No. 2:10–CV–00467–APR, 2014 WL 835382, at *4 (N.D.Ind. Mar. 4, 2014). Further:

> Even if the court were to recognize trial depositions as distinct from discovery, the plaintiffs' request to take a deposition… is outside the scope of what is contemplated to be a trial deposition. Trial depositions are limited to preserving testimony rather than seeking out new information.

*Id.*

Hill's notice of trial deposition—demanding that a deposition go forward *at trial* on topics that he never pursued during discovery—was just as improper, if not moreso, than his prior two subpoenas. The district court did not err in sustaining Homeward's objection.

### *3. Hill's motion to compel was properly denied.*

On October 17, 2014, the Friday before the Monday trial, with his improper subpoenas and notice of trial deposition rejected, Hill moved the district court to compel Homeward to provide him with a trial witness. (Motion to Compel, R. 52, Page ID 1054-1057.) On the first day of trial, the district court allowed argument on that motion. (Trial, R. 60, Page ID 1260-1264.) The judge then denied it, reasoning as follows:

> First of all, the final pretrial order that was filed with this Court and which the parties submitted at the final pretrial conference which was held five-and-a-half to six weeks ago indicates on the form, with regard

to witnesses, that -- and I quote -- in the absence of reasonable notice to opposing counsel to the contrary, both parties will call and will have available at trial corporate representatives.

Ms. Rivera, at the time of the final pretrial, indicated that she would not be requiring Ms. Kearse to be present. And, to be honest with you, at that point in time, I don't think we even discussed Ms. Kearse specifically, but a corporate representative in general.

The long shot of it was that, at the final pretrial conference, Ms. Rivera indicated that Mr. Doucet, counsel for the plaintiff, would be required to subpoena a witness. Mr. Doucet attempted to do so, but incorrectly did so, and that's why this Court issued its order to quash.

There is a mechanism available to counsel for the plaintiff to have a subpoena issued and served upon a witness who is beyond the jurisdiction of this Court, and Mr. Doucet chose not to do that. This Court will not require counsel for the defendant to have a corporate representative available.

And, to be honest with you, Mr. Doucet knew this because he started issuing subpoenas, although in my mind they were incorrect. And I put that order on with regard to that.

(*Id.* at Page ID 1264-1265.)

Civil Rule 45 provided Hill with a mechanism by which to secure trial testimony, but he did not comply with that Rule. His subpoenas and notice of trial deposition were improper. The district court did abuse its discretion by refusing to compel Homeward to provide Hill with a trial witness when Hill did not take the available opportunity to secure one for himself. Hill's second argument must be overruled.

33

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Homeward respectfully requests that Hill's arguments be overruled, and that the district court's judgments be affirmed.

Respectfully submitted,


*/s/Kimberly Y. Smith Rivera*
Kimberly Y. Smith Rivera (0066849)
**McGlinchey Stafford**
25550 Chagrin Boulevard, Suite 406
Cleveland, Ohio 44122-4640
Phone:    216-378-9905
Fax:        216-378-9910
kyrivera@mcglinchey.com

*Counsel for Defendant-Appellee*
*Homeward Residential, Inc.*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

1.      This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 8,439 words according to the word count provided by Microsoft Word 2010, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: March 25, 2015                    */s/Kimberly Y. Smith Rivera*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *Brief of Defendant-Appellee Homeward Residential, Inc.* was filed this 25th day of March, 2015, using the Court's CM/ECF system, thereby providing electronic notice to all parties of record.

*/s/Kimberly Y. Smith Rivera*
Kimberly Y. Smith Rivera

# ADDENDUM

## Designation of Relevant Lower Court Documents
## 6 Cir. R. 28(b)(1)(A)(i) & 30(g)(1)

Record #1, Complaint, Page ID 1-9

Record #10, Scheduling/Pretrial Order, Page ID 37-40

Record #11, Scheduling Order, Page ID 41

Record #18, Defendant's Notice of Filing Transcript of Deposition of Plaintiff Stephen M. Hill, Page ID 56-134

Record #19, Defendant's Motion for Summary Judgment, Page ID 135-153
    Record #19-1, Summary Judgment Affidavit, Page ID 154-171
    Record #19-2, Excerpts of Deposition of Crystal Kearse, Page ID 172-181
    Record #19-3, Plaintiff's Responses to Defendant's Requests for Admissions, Page ID 182-215

Record #23, Plaintiff's Notice of Filing Transcript of Deposition of Crystal Kearse, Page ID 226-838

Record #26, Plaintiff's Cross-Motion for Summary Judgment and Memorandum in Opposition to Defendant's Motion for Summary Judgment, Page ID 872-900

Record #27, Defendant's Reply in Support of Motion for Summary Judgment, Page ID 901-909

Record #28, Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Page ID 910-917

Record #31, Opinion and Order, Page ID 928-939

Record #32, Notice of Final Pretrial Conference, Page ID 940

Record #36, Plaintiff's (First) Notice of Subpoena, Page ID 955-961

Record #38, Defendant's (First) Objection to and/or Motion to Quash Subpoena, ID 970-980

Record #39, Defendant's Notice of Clarification and Amendment to Joint Final Pretrial Order, Page ID 981-984

Record #40, Plaintiff's (Second) Notice of Subpoena, Page ID 985-991

Record #42, Plaintiff's Notice of Return of Service of (Second) Subpoena, Page ID 995-997

Record #43, Order, Page ID 998

Record #44, Defendant's (Second) Objection to and/or Motion to Quash Subpoena, Page ID 999-1010

Record #45, Order, Page ID 1011-1012

Record #46, Plaintiff's Notice of Trial Deposition, Page ID 1013-1016

Record #47, Defendant's Objection to Plaintiff's Notice of Trial Deposition, Page ID 1017-1021

Record #49, Order, Page ID 1038-1039

Record #52, Plaintiff's Motion to Compel, Page ID 1054-1057

Record #53, Minute Entry for Proceedings: Jury Trial (Day 1) held on 10/20/2014, Page ID 1058-1059

Record #54, Jury Instructions, Page ID 1060-1231

Record #55, Minute Entry for Proceedings: Jury Trial (Day 2) held on 10/21/2014, Page ID 1247

Record #57, Order, Page ID 1252-1253

Record #58, Judgment in a Civil Action, Page ID 1254-1255

Record #59, Plaintiff's Notice of Appeal, Page ID 1256-1257

Record #60, Transcript of Trial Proceedings Volume 1, Page ID 1258-1468